# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL NO. |
| Plaintiff, | |
| v. | |
| ELEVEN MILLION SEVENTY-ONE THOUSAND ONE HUNDRED AND EIGHTY-EIGHT DOLLARS AND SIXTY-FOUR CENTS ($11,071,188.64) IN UNITED STATES CURRENCY, MORE OR LESS, SEIZED FROM LAOSTRICHES & SONS, INC., | |
| Defendant-in-rem. | |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

## NATURE OF THE ACTION

This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of 18 U.S.C. §§ 1956(a)(1)(B)(I) and 1956(h) that are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## JURISDICTION AND VENUE

This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. § 1355(b)(1) and 28 U.S.C. §1395(b), as the acts or omissions giving rise to the forfeiture took place in this district and the property is located in this district.

### THE DEFENDANT-IN-REM

The defendant-in-rem consists of Eleven Million Seventy-One Thousand One Hundred and Eighty-Eight Dollars and Sixty-Four Cents ($11,071,188.64) in United States Currency, More or Less, Seized From LaOstriches & Sons, Inc.

The defendant-in-rem is within the possession, custody or control of the United States.

### FACTS

1. In or about December 2011, special agents of the Drug Enforcement Administration (hereafter "DEA") St. Louis Division, began an investigation into the drug trafficking and related money laundering activities of the CIFUENTES-VILLA Family Drug Trafficking Organization ("CIFUENTES-VILLA FDTO") operating in Colombia, Mexico, Ecuador, and elsewhere throughout Central and South America. The CIFUENTES-VILLA FDTO is comprised of family members with different roles, including brothers JORGE, FRANCISCO and FERNANDO Cifuentes-Villa ("FERNANDO").

2. The investigation has revealed that FRANCISCO and his brother JORGE began their drug trafficking careers in Colombia in the late 1970's or early 1980's transporting cocaine aboard trucks for Efraín Hernández-Ramírez, a.k.a. "Don Efra" ("DON EFRA"), a founder of the notorious Colombian drug Cartel Del Norte Del Valle, and receiving Don Efra's cocaine shipments destined for the United States in Mexico.

3. The CIFUENTES-VILLA FDTO primarily supplies cocaine to Joaquín GUZMAN-LOERA, a.k.a. "Chapo" (hereinafter "GUZMAN-LOERA"), head of the Sinaloa Drug Cartel in Mexico. The drugs supplied by the CIFUENTES-VILLA FDTO are imported into the United States through the use of aircraft, motor vessels, and other means of transportation.

4. Among other things, JORGE was responsible for laundering the drug proceeds of the CIFUENTES-VILLA FDTO. To this effect, JORGE set up businesses using aliases and the names of family members, and used fictitious or shell companies, including real estate, coffee, money remitting, aviation and internet businesses, in order to conceal the drug proceeds. To date, law enforcement agents have identified at least 70 different business names associated with the CIFUENTES-VILLA FDTO.

5. As part of his role, JORGE oversaw the complex movement of money intended to conceal the CIFUENTES-VILLA FDTO drug proceeds and to purchase aircraft and other property used in the drug trade.

6. JORGE was also in charge of settling the debts incurred by the CIFUENTES-VILLA FDTO. For instance, after his brother FERNANDO was murdered in November 1996, JORGE's brother FRANCISCO was kidnapped by members of a Colombian paramilitary group who demanded satisfaction of an outstanding $40 million debt incurred by FERNANDO. In order to satisfy a portion of the debt, JORGE liquidated several pieces of property.

7. Following FERNANDO's murder, JORGE traveled continuously and eventually moved from Colombia to Mexico. Thereafter, JORGE adopted several aliases including Sergio OSUNA-VILLAREAL ("OSUNA-VILLAREAL").

8. On November 19, 1996, a few days after his brother FERNANDO was murdered, JORGE, using the OSUNA-VILLAREAL alias, established a private investment company in the British Virgin Islands named Timber Development Ltd. ("TIMBER DEVELOPMENT").

9. Between January and February of 1997, JORGE authorized the opening of two (2) brokerage accounts at Salomon Smith Barney in the name of TIMBER DEVELOPMENT. The investigation has revealed that these brokerage accounts at Smith Salomon Barney were continuously used by JORGE to launder the proceeds generated as a result of JORGE's and/or the CIFUENTES-VILLA FDTO's narcotics trafficking. For instance, the drug proceeds in these brokerage accounts were continuously involved in numerous financial transactions, including the purchase of securities, designed to conceal and disguise the true location, source, ownership and control of the proceeds, and to give the proceeds the appearance of legitimacy. In or about November 1998, the TIMBER DEVELOPMENT brokerage accounts at Smith Salomon Barney had an approximate net value of $10,741,625.00 in cash and securities.

10. A third brokerage account opened in the name of TIMBER DEVELOPMENT on September 18, 1998, at Prudential Securities was eventually funded primarily by transfers of the drug proceeds on deposit within the two (2) Salomon Smith Barney accounts.

11. Brokerage statements for the Prudential Securities account show that between 2000 and 2002, numerous outgoing wire transfers were generated from this account to individuals connected to the CIFUENTES-VILLA FDTO in furtherance of the illegal activities of the organization.

12. A review of the client statements for all three TIMBER DEVELOPMENT brokerage accounts at Salomon Smith Barney and Prudential Securities shows that throughout

their existence, account brokers continuously traded the illicit proceeds by purchasing and selling securities.

13. The investigation has revealed that JORGE had a close friend and fellow money launderer known as HUMBERTO OJEDA-BARRAZA("OJEDA-BARRAZA"), a.k.a. "Luis Perez," a.k.a. "Oscar Gonzalez" who resided in Culiacán, in the State of Sinaloa, Mexico. OJEDA-BARRAZA was married to Laura AVILA-BARRAZA ("AVILA-BARRAZA") until his death in or about 1997.

14. On or about January 19, 2001, AVILA-BARRAZA and two relatives incorporated LaOstriches & Sons Limited ("LAOSTRICHES") in Tortola, British Virgin Islands. A few days after its incorporation, the majority of the drug proceeds and securities on deposit in the TIMBER DEVELOPMENT Salomon Smith Barney accounts were transferred to the LAOSTRICHES brokerage accounts. In or about September 2002, the drug proceeds of the Prudential Securities TIMBER DEVELOPMENT account were transferred to a LAOSTRICHES brokerage account. Thereafter, LAOSTRICHES transferred and layered these proceeds and securities through several brokerage accounts opened in the name of LAOSTRICHES.

15. Review and analysis of the client statements for the LAOSTRICHES' brokerage accounts show that just as in the three TIMBER DEVELOPMENT brokerage accounts, account brokers continuously traded the LAOSTRICHES' accounts by purchasing and selling securities, and transferred the proceeds into other accounts of business associated with money laundering and JORGE.

16. The last two brokerage accounts belonging to LAOSTRICHES were held at Wells Fargo Advisors in Miami, FL. However, trades and security transactions made through these two

accounts on behalf of LAOSTRICHES were cleared through First Clearing LLC, a brokerage–clearing service headquartered in St. Louis, Missouri. Accordingly, transfers of security ownership within these accounts took place in this district.

17. On April 5, 2012, the U.S. District Court for the Eastern District of Missouri issued seizure warrants authorizing the liquidation of the two LAOSTRICHES brokerage accounts at Wells Fargo Advisors. The United States has in its custody and possession $11,071,188.64 constituting the liquidation of the LAOSTRICHES' brokerage accounts. At present, this defendant-in-rem property is in the custody of the U.S. Marshals Service in this district.

18. On November 2, 2010, a federal grand jury sitting in the Southern District of Florida indicted JORGE for conspiring to import and distribute multi-ton quantities of cocaine from Colombia to the United States, via Central America, from October 2003 until early 2009, and multiple money laundering charges from October 2003 through June 2007. JORGE was also indicted in the Southern District of New York with conspiring from October 2008 up to February 2011 to import cocaine into the United States. He is currently a fugitive of justice.

**FIRST CLAIM FOR FORFEITURE**
(18 U.S.C. § 981(a)(1)(A) - Property Involved in and/or
Traceable to Money Laundering Transactions)

19. The allegations contained in paragraphs 1 through 18 of this Verified Complaint for Forfeiture In Rem are incorporated by reference.

20. Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "any property, real or personal, involved in a transaction or attempted transaction in violation of section[] 1956 ..., or any property traceable to such property."

6

21. The defendant-in-rem was property that was involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or represented proceeds traceable to such property.

22. Thus, the defendant-in-rem constitutes property involved in and/or traceable to money laundering transactions conducted in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and is therefore liable to condemnation and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR FORFEITURE
(18 U.S.C. § 981(a)(1)(A) - Property Involved in and/or
Traceable to Money Laundering Transactions)

23. The allegations contained in paragraphs 1 through 18 of this Verified Complaint for Forfeiture In Rem are incorporated by reference.

24. Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "any property, real or personal, involved in a transaction or attempted transaction in violation of section[] 1956 ..., or any property traceable to such property."

25. The defendant-in-rem was property that was involved in a transaction in violation of 18 U.S.C. § 1956(h), or represented proceeds traceable to such property.

26. Thus, the defendant-in-rem constitutes property involved in and/or traceable to money laundering transactions conducted in violation of 18 U.S.C. § 1956(h) and is therefore liable to condemnation and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

Therefore, the United States requests that:

(a) the Court direct the Clerk's Office to issue a Warrant of Arrest In Rem pursuant to Rule G(3)(b)(i), in the form submitted with this Verified Complaint, to the Drug Enforcement Administration or any other duly authorized Law Enforcement Officer commanding an officer to (1) arrest the defendant-in-rem in the Government's possession, and (2) give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

(b) judgment for forfeiture be decreed against the defendant-in-rem; and

(c) this Court grant the United States its costs and whatever other relief to which it may be entitled.

Dated: August 29th, 2012

                        COUNSEL FOR THE
                        UNITED STATES OF AMERICA

                        RICHARD G. CALLAHAN
                        United States Attorney

                        _____
                        James Delworth
                        Assistant United States Attorney
                        111 South 10th Street, Room 20.333
                        St. Louis, MO  63102

                        JENNIFER SHASKY-CALVERY, CHIEF
                        ASSET FORFEITURE AND
                        MONEY LAUNDERING SECTION

                        FREDERICK REYNOLDS, DEPUTY CHIEF
                        ASSET FORFEITURE AND
                        MONEY LAUNDERING SECTION

                        _____
                        Aixa Maldonado-Quiñones
                        (PR Bar No. 10052)
                        Trial Attorney
                        Asset Forfeiture and Money Laundering Section
                        Criminal Division
                        United States Department of Justice
                        1400 New York Avenue, N.W., 10th Floor
                        Washington, D.C.  20530
                        Telephone (202) 514-1263

**VERIFICATION**

I, Karin E. Caito, being duly sworn, depose and say that I am a Special Agent with the United States Drug Enforcement Administration and as such have responsibility for the within action, that I have read the contents of the foregoing Verified Complaint for Forfeiture in Rem and know the contents therein, and that the same is true to the best of my knowledge, information and belief.

The sources of my information and the grounds of my belief are official records and files of the United States, and information obtained by me and other law enforcement officers during an investigation of alleged violations of Title 18 of the United States Code.

/s/ Karin E. Caito
Karin E. Caito
Special Agent, DEA

STATE OF MISSOURI
COUNTY OF ST. LOUIS

Subscribed and sworn to before me this ___ day of August, 2012.

/s/ Mary Chris Jorcke
Notary Public
My commission expires:

MARY CHRIS JORCKE
Notary Public - Notary Seal
State of Missouri
Commissioned for Franklin County
My Commission Expires: August 08, 2014
Commission Number: 10430933

10