UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12-CV-1559 (CEJ) |
| ) | |
| ELEVEN MILLION SEVENTY-ONE ) | |
| THOUSAND ONE HUNDRED AND ) | |
| EIGHTY-EIGHT DOLLARS AND SIXTY- ) | |
| FOUR CENTS ($11,071,188.64) IN ) | |
| UNITED STATES CURRENCY, MORE ) | |
| OR LESS, SEIZED FROM LAOSTRICHES ) | |
| & SONS, INC., ) | |
| ) | |
| Defendant-in-rem. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of the United States for summary judgment pursuant to Fed. R. Civ. P. 56. Claimant Laura Avila-Barraza has responded in opposition, and the issues are fully briefed.

I.  **Background**

The United States brings this action pursuant to 18 U.S.C. § 981(a)(1)(A) for forfeiture of $11,071,188.64 in U.S. currency that was seized as property involved in or traceable to money laundering transactions. On March 19, 2013, claimants Laura Avila-Barraza, Humberto Ojeda-Avila, Paulina Ojeda-Avila, Valentino Ojeda-Avila, and LaOstriches & Sons, Inc., filed notices claiming interests in the defendant currency, alleging that LaOstriches and its accounts had been vetted by the British Virgin Islands (BVI), the majority of the funds seized from the company originated from the sale of a family business, Santa Rita Fishery, and additional funds had been

deposited into the LaOstriches corporate brokerage account from proceeds the family received from rentals of their farmland. [Doc. #31-35]. In the claimants' answer to the forfeiture complaint, they assert innocent ownership pursuant to 18 U.S.C. § 983(d) as an affirmative defense. [Doc. #44].

On February 13, 2014, the Court granted the government's motion to strike the claims and answers filed by LaOstriches, Paulina Ojeda-Avila, Humberto Ojeda-Avila, and Valentino Ojeda-Avila for disobeying court orders and obstructing discovery by repeatedly failing to appear for scheduled depositions. In the instant motion, the government moves for summary judgment on the sole remaining claim of Avila-Barraza.

## II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). If the moving party meets its burden, the non-moving party may not rest on the allegations of its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Gannon Intern., Ltd.

v. Blocker, 684 F.3d 785, 792 (8th Cir. 2012); Gibson v. American Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Industrial Co.., 475 U.S. at 587).

### III. Discussion

#### A. Article III Standing

In support of its motion, the government first asserts that Avila-Barraza does not have an ownership interest in the property owned by LaOstriches, and so is without Article III standing to file a claim to the defendant funds on her own behalf. In a forfeiture action, Article III standing turns on whether the claimant has a sufficient ownership interest in the seized property to create a case or controversy. United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003). To meet its burden of proof, the claimant "need only show a colorable interest in the property, redressable, at least in part, by a return of the property." Id. (quoting United States v. 7725 Unity Ave. N., 294 F.3d 954, 957 (8th Cir. 2002)). A colorable ownership interest "may be evidenced in a number of ways including showings of actual possession, control, title and financial stake." Id. (quoting United States v. One 1945 Douglas C-54 (DC-4) Aircraft, 647 F.2d 864, 866 (8th Cir. 1981)).

Ownership interests in the Eighth Circuit are defined by "the law of the State in which the interest arose." Id. Here, Florida is the jurisdiction in which the accounts were established and maintained, while Missouri is the jurisdiction from which the

property was seized.[1] The government argues that because LaOstriches could not conduct any securities transactions without first being cleared and settled by First Clearing LLC in St. Louis, Avila-Barraza's alleged ownership interest only arose because of First Clearing LLC's involvement. Thus, according to the government, Missouri law should apply. The government and Avila-Barraza both argue that the application of either Missouri or California law yields a result favorable to their respective positions. Because the factual allegations do not provide a clear answer as to where the interest arose, the Court will look to both Missouri and Florida law in determining whether claimant has alleged an ownership interest sufficient to establish standing for her claim.

In support of her alleged interest, Avila-Barraza asserts that the transfer of the assets to the LaOstriches account created a resulting trust of which she is the beneficiary. Avila-Barraza claims that she contributed all of the assets that funded the LaOstriches accounts, and intended these payments to be maintained exclusively for her and her family's own benefit. She further alleges that in "no real sense was LaOstriches an independent operating entity" with its own assets and ongoing business activities; rather, it was simply a "personal holding company." Claimant's Resp. & Mem. in Opp'n, at *6-7 [Doc. #156]. Claimant states that she "does not view the account as a 'corporate' account having an independent existence separate and apart from her family but, rather, as a personal account with a name." Id. at *15.

---

1 Claimant argues that the law of the British Virgin Islands (BVI) should apply, because this is where LaOstriches was incorporated. The property at issue here, however, is the assets seized from the LaOstriches accounts in the United States, not the corporation itself. The claimant's claim of ownership did not arise in the BVI.

Under Missouri law, a resulting trust "arises where property is transferred under circumstances that raise an inference that the person who makes the transfer or causes it to be made did not intend the transferee to take the beneficial interest in the property." Lynch v. Lynch, 260 S.W.3d 834, 838 (Mo. banc 2008) (quoting Matlock v. Matlock, 815 S.W.2d 110, 114 (Mo. Ct. App. 1991)). A resulting trust "is implied by law to meet the requirement of justice that a legal status be given to what is the clear intention of the parties." Id. (quoting Brown v. Brown, 152 S.W.3d 911, 918 (Mo. Ct. App. 2005)). To establish a resulting trust in Missouri, "an extraordinary degree of proof is required . . . vague or shadowy evidence or a preponderance of the evidence is not sufficient. The evidence must be so unquestionable in its character, so clear, cogent and convincing that no reasonable doubt can be entertained as to its truth and the existence of the trust." Jones v. Anderson, 618 S.W.2d 252, 255 (Mo. Ct. App. 1981) (quoting Pizzo v. Pizzo, 295 S.W.2d 377, 385 (Mo. banc 1956)).

Similarly, under Florida law, a resulting trust "is a reversionary, equitable interest that arises under circumstances which raise the unrebutted inference that the transferor does not intend the one who receives the property to have the beneficial interest." Persan v. Life Concepts, Inc., 738 So. 2d 1008, 1012 (Fla. Dist. Ct. App. 1999). As in Missouri, evidence in support of a resulting trust must be "so clear, strong and unequivocal as to remove . . . every reasonable doubt as to the existence of the trust." Grapes v. Mitchell, 159 So. 2d 465, 469 (Fla. 1963).

Claimant has failed to provide clear and convincing evidence to justify the equitable remedy of a resulting trust. To the contrary, the record in this case establishes that claimant incorporated LaOstriches, an ostrich farm operation, in

compliance with all formal procedures as a legal entity for the purpose of receiving and managing the assets acquired from Timber Development. See A & E Enterprises, Inc. v. Clairsin, Inc., 169 S.W.3d 884, 888 (Mo. Ct. App. 2005) (stating that a corporation is a separate and distinct entity from its incorporators and shareholders); Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008) (same). Timber Development's assets were acquired from proceeds generated by the Cifuentes-Villa family's drug trafficking organization. Gov't Statement of Uncontested Material Facts, at *1-2 [Doc. #155-2, ¶¶ 1-5].

Since its incorporation, and for more than ten years, LaOstriches represented to government agencies, including the Internal Revenue Service, and to financial institutions at which it held securities accounts, that it possessed legal title to the property as corporate accounts—not as Avila-Barraza's personal accounts. See A & E Enterprises, Inc., 169 S.W.3d at 888 (stating that "shareholders of a corporation should not be able to choose when its form is disregarded and when it is not"); Ed Skoda Ford, Inc. v. P & P Paint & Body Shop, Inc., 277 So. 2d 818, 819 (Fla. Dist. Ct. App. 1973) (holding that officers of a corporation "cannot avail themselves of the corporate shield when it suits their purpose and discard the same when it does not appear advantageous"). All of the brokerage account client statements were issued to LaOstriches, not to Avila-Barraza in her individual capacity.

Even if claimant supplied the capital or transferred personal funds to the corporation, she could not assert an individual claim that would deprive LaOstriches of its claim to the property seized from corporate accounts. See Emergency Patient Servs., Inc. v. Crisp, 602 S.W.2d 26, 28 (Mo. Ct. App. 1980) ("[N]either the executive officers nor the directors of an incorporated company have a right to convert its assets

to their own use . . . or make any self-serving disposition of them against the interest of the company."). Cf. News-Journal Corp. v. Gore, 2 So. 2d 741, 744 (Fla. 1941) ("[T]here is no responsibility on the part of an officer of a corporation to loan money to it or to supply personal funds to buy property for it," and "where there is a duty on the part of officers to acquire property for the corporation and in violation of the obligation they purchase it individually they cannot retain the benefit but become trustees."). The gains and losses of the LaOstriches' accounts remained within the corporation and dividends were never issued. See Craig-Garner v. Garner, 77 S.W.3d 34, 38 (Mo. Ct. App. 2002) ("Retained earnings and profits of a corporate are a corporate asset and remain the corporation's property until severed from other corporate assets and distributed as dividends.").

Furthermore, claimant's characterization of LaOstriches as a "personal holding company" does not destroy its distinct legal personage. See Commerce Trust Co. v. Woodbury, 77 F.2d 478, 487 (8th Cir. 1935) ("[N]otwithstanding such situation and such intimacy of relation, the corporation will be regarded as a legal entity, as a general rule, and the courts will ignore the fiction of corporate entity only with caution, and when the circumstances justify it, [such as] when it is used as a subterfuge to defeat public convenience, justify wrong, or perpetrate a fraud."). As the title owner, the LaOstriches, in its corporate capacity, possessed and exercised dominion and control over the assets in the brokerage accounts seized by the government. See LaOstriches' Mot. for Recons. at *5 [Doc. #135] ("LaOstriches came to own the defendant property as a bonified (sic) seller or purchaser for value having sold a family held business, [Santa Rita Fishery,] and from the leasing of real estate."); see also Walters v. Larson, 270 S.W.2d 112, 115 (Mo. Ct. App. 1954) ("The

general rule is that the legal title to corporate property is in the corporation."); Brevard County v. Ramsey, 658 So. 2d 1190, 1196 (Fla. Dist. Ct. App. 1995) ("It is basic hornbook law that corporate property is vested in the corporation itself, and not in the individual stockholders, who have neither legal nor equitable title in the corporate property.") (internal quotations and citations omitted). Avila-Barraza managed the corporate assets in her role as an officer and director of LaOstriches, not in her individual capacity. See Gieselmann v. Stegeman, 443 S.W.2d 127, 136 (Mo. 1969) ("A director of a corporation occupies a position of the highest trust and confidence and the utmost good faith is required of [her] in the exercise of the powers conferred upon [her]."); Flight Equip. & Engineering Corp. v. Shelton, 103 So. 2d 615, 626 (Fla. 1958) (stating that an officer to a corporation "impliedly agrees and undertakes to . . . exercise the powers conferred on [her] solely in the interest of the corporation and the stockholders").

Even as the sole shareholder of the corporation, Avila-Barraza did not hold an individual ownership interest over the company's assets. Wendel v. Wendel, 72 S.W.3d 626, 632 (Mo. Ct. App. 2002) ("A party who is the sole shareholder of a corporation does not have legal ownership of the corporation's property; rather, the title remains in the corporation.") (quotation omitted); Mease v. Warm Mineral Springs, Inc., 128 So. 2d 174, 179 (Fla. Dist. Ct. App. 1961) (stating that stockholders do not have vested title in corporate property). Directors, officers and shareholders of a corporation do not have standing to claim an ownership interest in corporate property in their individual capacities; they must state such a claim in the corporate name. See Merrill v. Davis, 225 S.W.2d 763, 768 (Mo. 1950) (stating that shareholders can only sue in the corporate name after directors of a corporation

improperly fail or refuse to defend in the corporate name); James Talcott, Inc. v. McDowell, 148 So. 2d 36, 37 (Fla. Dist. Ct. App. 1962) (stating that an action to enforce corporate rights or redress injuries to the corporation must be brought in the name of the corporation itself); see also In re Bridge Information Sys., Inc., 325 B.R. 824, 832 (Bankr. E.D. Mo. 2005) (stating that "if the corporation sustains the direct harm from the alleged wrongdoing, then claims stemming from that wrongdoing belong to the corporation only"). Claimant cannot avail herself of the benefits of incorporation and remain free to disregard the corporate form when she finds it to be disadvantageous.

Thus, only LaOstriches would have standing to challenge the government's seizure of the property from its brokerage accounts.[2] Avila-Barraza has provided insufficient factual allegations through her contorted reverse veil-piercing theory to establish standing in her individual capacity. Summary judgment in favor of the government, therefore, is appropriate on this threshold issue.

Even if Avila-Barraza had Article III standing to contest the forfeiture of the property at issue, her innocent ownership claim also fails under the language of the controlling statute, for the reasons discussed below. See One Lincoln Navigator 1998, 328 F.3d at 1014 (stating that a claimant may have Article III standing but fail

---

2 The record on this motion consists of hundreds of pages of affidavits, depositions, answers to interrogatories, account statements and other materials. After a review of these documents, in which the material facts set forth above are not disputed, an evidentiary hearing is not necessary. See United States v. 1998 BMW "I" Convertible Vin No. WBABJ8324WEM 20855, 235 F.3d 397, 400 (8th Cir. 2000) (holding a district court should hold an evidentiary hearing when the court is presented with a "warring paper record" that contains conflicting versions of the facts and the court must make witness credibility determinations). The claimant's allegations relate to a legal question of LaOstriches' corporate form. The record does not contain a material question of fact regarding ownership interest.

to establish an ownership interest as defined by § 983(d)(6) and thereby fail to state a claim on the merits).

## B. Ownership Under 18 U.S.C. § 983(d)

The government asserts that it also is entitled to summary judgment because Avila-Barraza is not an owner as defined by 18 U.S.C. § 983(d)(6), and so cannot pursue an innocent owner claim.[3] Civil forfeiture is governed by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106–185, 114 Stat. 202, codified in part at 18 U.S.C. §§ 981 & 983. Section 983(d) provides an innocent owner defense to a civil forfeiture action. An "owner" for purposes of this subsection is "a person with an ownership interest in the specific property sought to be forfeited" and "does not include a person with only a general unsecured interest in, or claim against, the property," a bailee, or "a nominee who exercises no dominion or control over the property." § 983(d)(6). A claimant has the burden of proof to establish she is an innocent owner by a preponderance of the evidence. § 983(d)(1).

---

3 "Under CAFRA, the burden of proof is [first] on the [g]overnment to establish, by a preponderance of the evidence, that the property is subject to forfeiture." United States v. Real Prop. Located at 3234 Wash. Ave. N., Minneapolis, Minn., 480 F.3d 841, 843 (8th Cir.2007) (quoting 18 U.S.C. § 983(c)(1)). "[I]f the [g]overnment's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the [g]overnment shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). If the government successfully meets its burden of proof, then the burden shifts to the claimant to prove that the property is not subject to forfeiture by a preponderance of the evidence. Real Property Located at 3234 Wash. Ave., 480 F.3d at 843 (8th Cir.2007); United States v. $92,203.00 in U.S. Currency, 537 F.3d 504, 508–09 (5th Cir.2008) (citing 18 U.S.C. § 983(d)(1)). Claimant does not dispute that the government has met its burden, and the illegal source of the property at issue is supported by ample evidence in the record. Therefore, the claimant is deemed to have conceded the forfeitable nature of the property, and summary judgment is appropriate for her failure to meet her burden of proof as to innocent ownership. See United States v. $20,000.00 in U.S. Currency, 149 Fed. Appx. 555, 556 (8th Cir.2005) (summary judgment for government proper because government met its burden of proof and claimant "failed to meet her burden of showing by a preponderance of the evidence that the $20,000 was not connected to drug-trafficking activities.") (per curiam).

After viewing the evidence in the light most favorable to claimant, the Court finds that Avila-Barraza has not raised a question of fact as to her ownership interest in satisfaction of the statutory criteria. In her response to the instant motion, claimant alleges an equitable interest in the property through a request for a judicially imposed resulting trust. As set discussed above, the Court declines to interpret the incorporation of LaOstriches as having created a resulting trust with Azila-Barraza as the beneficiary. Rather, LaOstriches, in its corporate capacity, possessed legal title and exercised complete control over the defendant property. Avila-Barraza did not take formal action as the company's sole director and shareholder to dissolve the corporation and gain personal access to the property or transfer the assets to her own personal accounts. As such, claimant falls within the category of persons "with only a general unsecured interest in" the seized corporate property and therefore without an ownership interest under the statute. § 983(d)(6)(B)(i); see In re Cummins, 166 B.R. 338, 358 (Bankr. W.D. Ark. 1994) (stating that a stockholder's property interest extends only to the intangible personal property rights represented by the stock certificates).

Moreover, even if the Court were to find clear and convincing evidence to support the imposition of a resulting trust, an equitable interest under state law is insufficient to provide a secured interest in the property as an owner under the federal civil forfeiture statute. United States v. All Funds in the Account of Property Futures, Inc., 820 F. Supp. 2d 1305, 1333-34 (S.D. Fla. 2011) (stating that "the specific federal forfeiture statute preempts . . . any state law establishing equitable property rights"); United States v. One 2004 Land Rover Range Rover, No. 07-CV-818S, 2009 WL 909669, *4 (W.D.N.Y. Mar. 31, 2009) (stating that an assertion of an equitable

ownership interest in property is insufficient to pursue an innocent owner defense pursuant to § 983(d)); <u>United States v. 74.05 Acres of Land</u>, 428 F. Supp. 2d 57, 65 (D. Conn. 2006) (stating that a claimant "with an asserted equitable interest can properly be regarded as having only a general unsecured interest in, or claim against, the property and is specified as not an owner" under § 983(d)(6)(B)).  With only an unsecured property interest, Avila-Barraza does not qualify as an "owner" for the statutory innocent owner defense.

Because there is no genuine issue of material fact as to the claimant's failure to establish an ownership interest in the seized property, either for Article III standing or for an innocent owner defense under § 983(d), the United States is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of the United States for summary judgment [Doc. #155] is **granted**.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE


Dated this 13th day of February, 2015.